**Ernest F. HEFFNER, et. al, Plaintiffs**

v.

**Donald J. MURPHY, et. al, Defendants.**

**No. 08–cv–990.**

United States District Court,
M.D. Pennsylvania.

Dec. 22, 2008.

Barbara A. Zemlock, James J. Kutz, Post & Schell P.C., Harrisburg, PA, Gary L. James, James Smith Dietterick & Connelly LLP, Hummelstown, PA, for Plaintiffs.

Christopher K. McNally, Maryanne M. Lewis, Commonwealth of Pennsylvania, Department of State, BPOA, Kenneth L. Joel, Office of Attorney General, Harrisburg, PA, for Defendants.

### *MEMORANDUM AND ORDER*

JOHN E. JONES III, District Judge.

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before this Court is Defendants' Motion to Dismiss the Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Rec.Doc.11). For the following reasons, the Motion will be granted in part and denied in part.

*PROCEDURAL HISTORY:*

Plaintiffs [1] initiated the instant action by lodging a massive Complaint against the

---

1. The named Plaintiffs are: Ernest F. Heffner; Harry C. Neel; Bart H. Cavanagh, Sr.; John Katora; Brian Leffler; Rebecca Ann Wessel; Mark Patrick Dougherty; Cynthia Lee Finney; Nathan Ray; Todd Eckert; Ben Blascovich; Matthew Morris; Greg Achenbach; Karen Eroh; William Pugh; William Sucharski; John McGee; Amber M. Scott; Arika Haas; Nicholas Wachter; David Halpate; Patrick Connell; Eugene Connell; Matthew Connell; James J. Connell, Jr.; Jefferson Memorial Park, Inc.; Jefferson Memorial Funeral Home, Inc.; Wellman Funeral Associates, Inc. D/b/a Forest Park Funeral Home;

Defendants[2] on May 20, 2008 alleging claims pursuant to 42 U.S.C. § 1983[3] and 28 U.S.C. § 2201[4] for deprivations of rights secured by the United States Constitution and the Pennsylvania Constitution.[5] (Rec.Doc.1). On July 25, 2008, the

East Harrisburg Cemetery Company d/b/a East Harrisburg Cemetery & Crematory; Robert Lomison; Craig Schwalm; Gregory J. Havrilla; and Betty Frey (collectively "Plaintiffs").

2. The named Defendants are: Donald J. Murphy; Joseph A. Fluehr III; Michael J. Yeosock; Bennett Goldstein; James O. Pinkerton; Anthony Scarantino; Basil Merenda; Michael Gerdes; Peter Marks; and C.A.L. Shields (collectively "Defendants").

3. This statute states, in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983 (1996).

4. This provision states, in relevant part, "In a case of actual controversy within its jurisdiction any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201 (1993).

5. The Complaint contains the following counts:

Count I—Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, James Connell, Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halplate, and Jefferson Memorial Funeral Home, Inc. v. All Named Defendants alleging Fourth Amendment violations as a result of 63 P.S. § 479.16(b).

Count II—Plaintiffs Heffner Cavanagh, Patrick Connell, Eugene Connell, Sucharski, Leffler, Jefferson Memorial Park, Inc., Jefferson Memorial Funeral Home, Inc., Robert Lomison, and Wellman Funeral Associates v. All Named Defendants alleging deprivations of rights secured by the Substantive Due Process Clause, Commerce Clause, and Article I § 1 of the Pennsylvania Constitution as a result of 63 P.S. § 479.8(a), (b), (d), and (e).

Count III—Plaintiffs Neel, Havrilla, Lomison, Schwalm, Frey, Wellman, Scott, Haas, and Wachter v. All Named Defendants alleging deprivations of rights secured by the Substantive Due Process Clause, Equal Protection Clause, Commerce Clause, and Article I § 1 of the Pennsylvania Constitution as a result of 63 P.S. § 479.8(a), (b), and (d).

Count IV—Plaintiffs Scott, Haas, and Wachter v. All Named Defendants alleging deprivations of their rights secured by the Substantive Due Process Clause, Equal Protection Clause as a result of 63 P.S. § 479.8(a), (b), and (d).

Count V—Plaintiffs Heffner, Cavanagh, Katora, Leffler, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Haas, Wachter, Halpate, and Wellman v. All Named Defendants alleging deprivations of the rights secured by the Substantive Due Process Clause, Commerce Clause and Article I § 1 of the Pennsylvania Constitution as a result of 63 P.S. § 479.8(e).

Count VI—Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Mathew Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, and Halpate v. All Named Defendants alleging deprivations of rights secured by the Substantive Due Process Clause and Article I § 1 of the Pennsylvania Constitution as a result of 63 P.S. § 479.2(11).

Count VII—Plaintiffs Heffner and Cavanagh v. All Named Defendants alleging deprivations of the rights secured by the Substantive due Process Clause and Article I § 1 of the Pennsylvania Constitution as a result of 63 P.S. § 479.7.

Count VIII—Plaintiffs Heffner Cavanagh Patrick Connell, Eugene Connell, Matthew Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halpate, Havrilla, Neel, and Jefferson Memorial Funeral home, Inc. v. All Named Defendants alleging deprivations of the rights secured by the Substantive Due Process Clause and Arti-

Defendants filed the instant Motion and a brief in support of that Motion. (Rec. Docs.11, 12). The Plaintiffs responded by filing their brief in opposition on September 3, 2008, (Rec.Doc.22), which led to the filing of Defendants' reply brief on September 16, 2008, (Rec.Doc.26). Oral argument was conducted on December 15, 2008. Having been fully briefed and argued, the instant Motion is presently ripe for disposition.

### STANDARD OF REVIEW:

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir.2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief", and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or

cle I § 1 of the Pennsylvania Constitution as a result of 63 P.S. § 479.7.

Count IX—Plaintiffs Heffner, Sucharski, Sucharski Cremation Service, Inc., and Jefferson Memorial Park, Inc. v. All Named Defendants alleging deprivations of the rights secured by the First Amendment Free Speech Clause and the Pennsylvania Constitution as a result of 63 P.S. § 479.8(a), (b), and (d).

Count X—All Plaintiff Funeral Directors v. All Named Defendants alleging deprivations of the rights secured by the Substantive Due Process Clause and Equal Protection Clause as a result of 63 P.S. § 479.10(b).

Count XI—Plaintiffs Lomison, Schwalm, East Harrisburg, and Jefferson Memorial Park, Inc. v. All Named Defendants alleging deprivations of the rights secured by the substantive Due Process Clause, Free Speech Clause, Contract Clause as a result of interpretations of the Funeral Director Law and Regulations that preclude properly licensed crematories that are not licensed funeral establishments from contracting with the general public to provide cremation services for either at need or pre-need.

Count XII—Plaintiffs Heffner, Cavanagh, Patrick Connell, Eugene Connell, Matthew Connell, James J. Connell, Jr., Katora, Leffler, Wessel, Dougherty, Finney, Ray, Eckert, Blascovich, Morris, Achenbach, Eroh, Pugh, Sucharski, McGee, Scott, Haas, Wachter, Halpate, and Jefferson Memorial Funeral Home, Inc. v. All Named Defendants alleging deprivations of the rights secured by the Substantive Due Process Clause, Equal Protection Clause, Free Speech Clause, Contract Clause, and the Pennsylvania Constitution as a result of interpretations of the Funeral Director Law and Regulations to preclude licensed funeral directors from having a legal interest in a merchandise company that sells funeral merchandise either at need or pre-need; or having a legal interest in a company that performs cremations unless those companies are licensed as funeral establishments.

Count XIII—All Plaintiffs v. All Defendants challenging the legality of 63 P.S. § 479.11(a)(8) and 49 Pa.Code § 13.202(5).

Count XIV—All Plaintiffs v. All Named Defendants requesting injunctive relief and continuing jurisdiction from this Court.

she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Twombly*, 127 S.Ct. at 1965 n. 3). "[A] complaint must allege facts suggestive of [the proscribed] conduct, and the [f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965, 1969 n. 8. Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S.Ct. at 1965 n. 3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231 (citing *Twombly*, 127 S.Ct. at 1964–65, 1969 n. 8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

### STATEMENT OF MATERIAL FACTS:[6]

#### A. PARTIES

Plaintiffs Ernest F. Heffner ("Heffner") and Nathan Ray are licensed funeral directors in York, PA. Plaintiff Betty Frey ("Frey") is an associate of Heffner and is not a licensed funeral director. Plaintiff Harry C. Neel ("Neel") is the President of Plaintiff Jefferson Memorial Funeral Home, Inc. and Plaintiff Jefferson Memorial Park, Inc., and has a principle place of business in Pittsburgh, PA. Plaintiff Bart H. Cavanagh, Sr. ("Cavanagh") is a licensed funeral director in Norwood, PA. Plaintiff John Katora ("Katora") is a licensed funeral director in Lewisberry, PA.

Plaintiff Brian Leffler ("Leffler") is a licensed funeral director in Avoca, PA. Plaintiffs Rebecca Ann Wessel ("Wessel"), Mark Patrick Dougherty ("Dougherty"), Amber M. Scott ("Scott"), and Cynthia Lee Finney ("Finney") are licensed funeral directors in Pittsburgh, PA.

Plaintiffs Todd Eckert ("Eckert") and Matthew Morris ("Morris") are licensed funeral directors in Red Lion, PA. Plaintiff Ben Blascovich ("Blascovich") is a licensed funeral director in Mill Hall, PA. Plaintiffs Greg Achenbach ("Achenbach") and William Pugh ("Pugh") are licensed funeral directors in Pottsville, PA. Plaintiff Karen Eroh ("Eroh") is a licensed funeral director in Wilkes–Barre, PA. Plaintiff William Sucharski ("Sucharski") is a licensed funeral director and owner of a duly approved crematory in Philadelphia, PA. Plaintiff John McGee ("McGee") is a licensed funeral director in Philadelphia, PA. Plaintiffs Erika Haas ("Haas") and Nicolas Wachter ("Wachter") are licensed funeral directors in Milton, PA. Plaintiff David Halpate ("Halpate") is a licensed funeral director in Renovo, PA. Plaintiffs Patrick Connell ("P.Connell"), Eugene Connell ("E.Connell"), Matthew Connell ("M.Connell"), and James J. Connell, Jr. ("J.Connell") are licensed funeral directors in Bethlehem, PA.

Plaintiff Jefferson Memorial Park, Inc. ("Jefferson MP") is a Pennsylvania corporation with a principle place of business in Pittsburgh, PA. Jefferson MP is a licensed cemetery and is the sole shareholder of Plaintiff Jefferson Memorial Funeral Home, Inc. ("Jefferson MFH"),[7] which is also a Pennsylvania corporation with a principle place of business in Pittsburgh,

---

**6.** Since the resolution of the instant Motions requires us to accept as true all of the allegations in the Complaint, the following recitation of facts is taken therefrom.

**7.** Plaintiffs aver that Jefferson MFH is a "Pre–1935" corporation under the Funeral Director Law such that its stock can be owned by any person, regardless of whether the person is a licensed funeral director, or by any entity.

PA. Plaintiff Wellman Funeral Associates, Inc., d/b/a Forest Park Funeral Home ("Wellman"), is a Louisiana corporation with a principle place of business in Shreveport, LA.[8] Plaintiff East Harrisburg Cemetery Company, d/b/a East Harrisburg Cemetery & Crematory ("East HBG Cem.") is a Pennsylvania corporation with a principle place of business in Harrisburg, PA.[9] Plaintiff Robert Lomison ("Lomison") owns and operates the William Howard Day Cemetery ("WHD Cem."), East HBG Cem., and Wellman. Plaintiff Craig Schwalm operates a crematory and cemetery and is the Vice President and General Manager of East HBG Cem. Plaintiff Gregory J. Havrilla is not a licensed funeral director, but is the General Manager of Jefferson MFH.

Defendant Donald J. Murphy ("Murphy") is an appointed consumer member of the Pennsylvania State Board of Funeral Directors (the "Board"). Defendants Mike Gerdes ("Gerdes"), Joseph A. Fluehr III ("Fluehr"), Michael J. Yeosock ("Yeosock"), Bennett Goldstein ("Goldstein"), James O. Pinkerton ("Pinkerton"), and Anthony Scarantino ("Scarantino") are members of the Board. Defendant Basil Merenda ("Merenda") is the Commissioner of the Bureau of Professional and Occupational Affairs, and is a member of the Board.[10]

Defendant Peter Marks ("Marks") is the Executive Deputy Chief Counsel of the Bureau of Professional and Occupational Affairs. Defendant Marks oversees a unit that makes prosecutorial decisions, and oversees investigations and prosecutions of individuals subject to various licensing laws, including the Funeral Director Law. Defendant C.A.L. Shields ("Shields"), as Director of the Bureau of Enforcement and Investigation ("BEI"), oversees all investigations conducted by the Bureau of Professional and Occupational Affairs. Defendants Marks and Shields are sued solely in their official capacities.

## B. FACTUAL BACKGROUND

The Funeral Director Law (the "Funeral Law") was enacted in 1952 to, purportedly, "provide for the better protection of life and health of the citizens of this Commonwealth by requiring and regulating the examination, licensure and registration of persons and registration of corporations engaging in the care, preparation and disposition of the bodies of deceased persons...."[11] 63 P.S. § 479.1 (1952). The Board is the administrative entity charged with the enforcement of the Funeral Law.[12] *Id.* § 479.16(a). In particular, the Board is "empowered to formulate necessary rules and regulations not inconsistent with this act for the proper conduct of the business or profession of funeral directing and as may be deemed necessary or proper to safeguard the interests of the public

---

**8.** Plaintiff Wellman is owned by an individual who is not a licensed funeral director in any state and who owns cemeteries and a crematory in Pennsylvania. Plaintiff Wellman, however, is precluded under the Funeral Director Law from owning a funeral home in Pennsylvania.

**9.** Plaintiff East HBG Cem. is a properly licensed cemetery and crematorium, but, as a result of Defendants' interpretation and enforcement of the Funeral Director Law, is being precluded from marketing and selling cremation packages to the public.

**10.** The Defendants set forth above are sued in their official and individual capacities.

**11.** The Plaintiffs allege that while the Funeral Law has been amended numerous times since its ratification in 1952, it nonetheless has failed to address changes in the law, generally, and changes in the death care industry, in particular.

**12.** Per the Funeral Law, the Board itself is composed of nine members, five of which are licensed funeral directors. 63 P.S. § 479.16(a).

and the standards of the profession." *Id.* To this end, the Board has promulgated regulations (the "Funeral Regulations") to implement the dictates of the Funeral Law.[13] 49 Pa.Code § 12.1 *et seq.*

Plaintiffs aver that, although the Funeral Laws and Regulations have not undergone significant change since their initial implementation, the funeral directing industry has experienced massive changes since that time, a result of which has been increased competition in the industry. (Compl.¶¶ 65–73). Plaintiffs assert that the rise in competition has not been warmly received by established funeral directors. (*Id.* ¶ 73). Thus, the Plaintiffs contend that the Board's current interpretation of the Funeral Laws and Regulations, which in some instances completely contradicts its past interpretations, is driven by an anticompetitive attitude that is aimed towards appropriating an even larger market share, if not an absolute monopoly, for established funeral directors.[14] (*See id.* ¶¶ 87–93). The Plaintiffs assert that these interpretations violate both the federal and state constitutions in various ways. We will delve into the specifics of these averments in relation to the instant Motion in the following section.

**DISCUSSION:**

In attacking the Plaintiffs' Complaint, the instant Motion addresses the Plaintiffs' allegations by argument rather than by count number. Under each argument, the Motion notes the counts to which it applies. However, before presenting substantive arguments related to the merits of specific counts, the Defendants lodge threshold arguments for dismissal that would, if accepted by this Court, obviate the need to reach the merits of each count. For ease of reference, we shall employ the same methodology as Defendants and address the issues pertinent to the instant Motion in the same order as that presented in the Defendants' brief in support.

### A. THRESHOLD ISSUES

### 1. SHOULD THIS COURT ABSTAIN?

■ The Defendants' abstention argument is rooted in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and its progeny. Defendants assert that in *Burford,* the Supreme Court of the United States held that a federal court should abstain from questions of state law that are of local concern and within the special competence of local courts. *See generally id.* *Burford* abstention is a 2–step process. First, a court must determine whether timely and adequate state law review is available, *Hi Tech Trans. LLC v. New Jersey,* 382 F.3d 295, 304 (3d Cir.2004); second, the court must determine whether the law at issue involves a matter of substantial public concern, reflects a complex and technical regulatory scheme, and whether federal review will interfere with establishing a coherent state public policy, *Chiropractic America v. Lavecchia,* 180 F.3d 99, 104 (3d Cir.1999). It is important to note that both steps must

---

13. The Plaintiffs contend that, similar to the Funeral Law, the Funeral Regulations have not been substantially modified to reflect societal changes.

14. In fact, the Plaintiffs aver that the Pennsylvania Funeral Director's Association ("PFDA"), a trade association comprised of licensed funeral directors in the Commonwealth, is the anti-competitive force driving the present interpretations of the Funeral Law. (Compl. §§ 74–82). In this vein, Plaintiffs maintain that, over the past two to three decades, numerous professional members of the Board have been high ranking officers of PFDA. (*Id.* ¶ 77). Indeed, it is Plaintiffs' belief that no professional appointed to serve on the Board in the last decade has been confirmed over the objection of PFDA. (*Id.* ¶¶ 82). Therefore, Plaintiffs assert that "unless you are 'anointed' by PFDA to serve on the Board, you will not ... serve on the Board." (*Id.*).

be satisfied in order to effectuate an abstention.

■ Assuming, *arguendo*, that the Defendants are successful in persuading us as to the first step, we believe that the second step cannot be successfully completed. Defendants analogize the instant array of facts to *Chiropractic*, a case where the Third Circuit Court of Appeals found abstention to be appropriate because, *inter alia*, the regulations at issue were part of a complex and coherent state scheme, which would be upset if a federal court were to interject itself into the litigation. *See generally Chiropractic*, 180 F.3d 99. However, we find the Defendants' analogy to be strained and unavailing.

Notably, the regulations at issue in *Chiropractic* dealt with no-fault automobile insurance regulations that, at the time of the challenge, had been ratified for less than one year. The *Chiropractic* Court makes clear that the regulations were comprehensive, labored over extensively, and very current. Conversely, at issue presently are Funeral Laws and Regulations which, according to Plaintiffs' Complaint, are extremely antediluvian and incomprehensive. (Compl. ¶¶ 48–55) In fact, as is chronicled by the 1994–95 Legislative Audit Committee Report, the "Board's regulation of the funeral directing profession ... is complicated by a statute that is outdated and in need of comprehensive revision." (Compl. Ex. 1 p. 25). Indeed, the Board itself has admitted that a number of its regulations are devoid of purpose or value. (*See generally id.*).[15] Moreover, the Plaintiffs have cast doubt upon the coherence of the scheme, alleging that the Defendants have, in the not so distant past, interpreted the same regulations inconsistently. (*Id.* ¶¶ 88–93). Therefore, it is our belief that the Plaintiffs have pled facts that indicate that the Funeral Laws and Regulations are not a part of a comprehensive, complex, and coherent regulatory scheme. Accordingly, since at the dismissal stage we must take the alleged facts as true, we believe that *Burford* abstention is not warranted under the circumstances of this case.

■ Also included in Defendants' "abstention section" is a reference to the *Rooker–Feldman* Doctrine, (Defs. Reply. Br. P. 11 n. 4), which is not an abstention doctrine, but rather addresses instances where district courts lack subject matter jurisdiction. The fundamental principle of the *Rooker–Feldman* Doctrine is that a federal district court may not sit as an appellate court to adjudicate appeals of state court proceedings. *Port Auth. Police Benevolent Ass'n v. Port Auth. of New York & New Jersey Police Dep't*, 973 F.2d 169, 179 (3d Cir.1992). The Doctrine does not bar individual constitutional claims by persons not parties to earlier state litigation. *Walker v. Flitton*, 66 Fed.Appx. 442,

---

**15.** Additionally, three years ago in *Walker v. Flitton*, 364 F.Supp.2d 503, 513 (M.D.Pa. 2005), we resolved a similar issue involving the Board and the Funeral Laws and Regulations. In that case, we held that (1) a prohibition against all solicitation and contact by anyone other than licensed funeral directors regarding preneed funeral services violated unlicensed salespersons' commercial speech rights; and that (2) individuals who are licensed as insurance agents but not as funeral directors, and who also are employees or agents of funeral director, may interact with consumers for the purpose of having their employer sell preneed funeral services and plans. During the hearing of December 15, 2008, we became aware that Board may be presently attempting to circumvent the *Walker* holdings by preventing agents and employees licensed as insurance agents, but not as funeral directors, from collecting commissions from funeral directors for their preneed funeral sales. Such alleged recalcitrance only gives credence to Plaintiffs assertion that the Funeral Laws and Regulations do not qualify as a comprehensive and coherent regulatory scheme.

444 (3d Cir.2003). In the instant case, Plaintiffs assert that, to the extent that state court proceedings have been previously conducted, the current Plaintiffs were not part of those proceedings. Therefore, we believe that at this stage of litigation, the *Rooker–Feldman* Doctrine is inapplicable.

## 2. IS THE MATTER RIPE FOR JUDICIAL DECISION?

■ As explained by the Third Circuit, two factors must be weighed in determining if a case is ripe: first, there must be a determination that hardship will befall the parties if judicial resolution is withheld; second, there must be a determination that the issues are fit for judicial review. *New Hope Books, Inc. v. Farmer*, 82 F.Supp.2d 321 (D.N.J.2000).

■ The hardship prong is not met, and a challenge to a criminal statute is not ripe, where there has been no prosecution under that statute *or* where alleged threats of prosecution can be characterized only as "imaginary or speculative." *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Under certain circumstances, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Id.* at 459, 94 S.Ct. 1209. "If the injury is certainly impending, that is enough." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). At the December 15, 2008 hearing, Plaintiffs' counsel acknowledged that if Defendants were to pursue the course of conduct that they desire, they would in fact be disciplined by the Board for violating the Funeral Laws and Regulations. Certainly, then, the threat of prosecution to Defendants is not "imaginary" or "speculative." Thus, the first prong of the ripeness standard has been satisfied.

It does not appear from their brief in opposition that the Defendants argue the second prong of the ripeness test; however, even if this issue was a point of contention, we believe that Plaintiffs have satisfied this prong, since the immediacy of the threat to Plaintiffs and the amelioration that a judgment in their favor would afford them militates in favor of the conclusion that their grievances are fit for our review.

## 3. DO THE PLAINTIFFS LACK STANDING?

■ Although the Defendants allude to a "standing argument" in their "Statement of Questions Involved," (Br. In Supp. p. 3), they do no explicitly devote a section to this topic. Nonetheless, we shall briefly address the issue. The "irreducible constitutional minimum" of standing requires: (1) that a plaintiff have suffered an injury in fact, which is an invasion of a legally protected interest which is concrete and particularized and actual or imminent rather than conjectural or hypothetical; (2) that there be a causal connection between the injury and conduct complained of so that the injury is fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party who is not before the court; and (3) that it be likely, as opposed to merely speculative, that injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations and quotations omitted).

■ We have already determined that the Plaintiffs have properly asserted an injury in fact, which was caused by the actions of the Defendants. In our discussion on ripeness, we also concluded that a favorable judgment would rectify this injury. Therefore, it is our determination that the Plaintiffs do have standing to sue the Defendants in the instant matter.

## 4. ARE DEFENDANTS IMMUNE FROM SUIT?

While counsel for both parties have spilled a great deal of electronic ink on issues of immunity in their dueling briefs, at the December 15, 2008 hearing, they admitted on the record that they do in fact share a common understanding of the immunity doctrines. We agree with this understanding, which we will now memorialize.

■ With regard to the federal claims, Plaintiffs cannot sue Defendants in their official capacities for monetary damages, as such claims are barred by the Eleventh Amendment. However, that Amendment does not bar suits for injunctive or equitable relief against individuals in their official capacities. Plaintiffs may also sue Defendants in their individual capacities for monetary relief and injunctive relief, provided that injunctive relief is sought pursuant to continuing violations of federal law.[16] *Mercer v. Brunt,* 299 F.Supp.2d 21 (D.Conn.2004).

■ With regard to state claims, since the issue of monetary damages is, by Plaintiffs' counsel's own admission, a "small peanut on the peanut farm," and since it might be subsumed by other issues in this litigation, we shall reserve judgment on its viability until a later time. As to the availability of injunctive or equitable relief, such relief can be obtained against Defendants sued in their individual capacities.[17] However, such relief cannot be obtained against individuals in their official capacities. *Pennhurst v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).[18]

Since all Defendants are sued in their individual capacities for injunctive relief pursuant to violations of federal law, all Defendants must remain in the present lawsuit. In the Order following the instant Memorandum, we will precisely de-

---

**16.** There would be continuing violations of federal law, as the Funeral Law and Regulations have not been repealed, meaning that if they were found to be unconstitutional, they would have maintained such a posture from the time of their inception to the present and, if this action was not brought, into the infinite future. With regard to injunctive relief on state claims, such relief is barred. *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores,* 484 F.3d 1 (1st Cir.2007).

**17.** The Eleventh Amendment bars a suit against state officials when " 'the state is the real, substantial party in interest.' " *Pennhurst,* 465 U.S. at 104, 104 S.Ct. 900 (quoting *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 465, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). That state cannot be a "real party in interest" when its employee is sued in his or her *individual* capacity. Thus, these claims are not barred by the Eleventh Amendment.

**18.** Plaintiffs' cite *Melo v. Hafer,* 912 F.2d 628, 635–36 (3d Cir.1990) (citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)), for the proposition that the Eleventh Amendment does *not* bar a suit against a state official in his or her official capacity when sued for injunctive relief. However, in Melo, injunctive relief was sought pursuant to violations of *federal* law. As *Pennhurst* Court opined:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman [v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)] are inapplicable in a suit against state officials on the basis of state law.

*Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900. Thus, insofar as Plaintiffs assert that the Funeral Laws and Regulations violate state law, the Plaintiffs cannot recover against officials sued in for injunctive relief in their official capacities.

lineate the counts, and the corresponding capacities, in which each Defendant can be sued.

## B. SUBSTANTIVE ATTACKS

### 1. SHOULD PLAINTIFFS' FOURTH AMENDMENT CLAIMS (COUNT I) BE DISMISSED?

The Fourth Amendment states, in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend IV. Count I asserts that 63 P.S. § 497.16(b) violates the Fourth Amendment.[19]

The Defendants assert that, pursuant to United States Supreme Court precedent,

> [L]egislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment. . . . The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that an owner of commercial property enjoys . . . differs significantly from the sanctity accorded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections.

\* \* \*

> [A] warrant may not be constitutionally required when Congress has reasonably determined that warrantless searches are necessary to further a regulatory scheme and the federal regulatory presence is sufficiently comprehensive and defined so that the owner of commercial property cannot help but be aware that his property will be subject

to periodic inspections undertaken for specific purposes.

*Donovan v. Dewey,* 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981). *See also U.S. v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (upholding validity of warrantless inspections authorized by the Gun Control Act); *Colonnade Catering Corp. v. U.S.,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (upholding the validity of warrantless inspections of businesses in the alcoholic beverage industry).

█ However, Plaintiffs aptly note that the *Biswell/Colonnade* Doctrine only permits warrantless searches within the context of a regulatory scheme *if* certain safeguards are set forth in the regulatory scheme to, *inter alia,* limit the discretion of the inspecting officers and limit the time, place, and scope of the inspections. *See New York v. Burger,* 482 U.S. 691, 702–03, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). The Plaintiffs aver that § 479.16(b) does not contain any limitations as to time, place, or scope of the inspections. (Compl.¶ 183). Taking, as we must, this allegation to be true, we conclude that the searches permitted by § 16 of the Funeral Law do not comport with the mandates of the *Biswell/Colonnade* Doctrine, and that therefore Plaintiffs have properly pled their Fourth Amendment claim. Accordingly, we will deny the instant Motion to that extent.

### 2. SHOULD PLAINTIFFS' SUBSTANTIVE DUE PROCESS CLAIMS (COUNTS II–VIII; X–XII) BE DISMISSED?

█ The Fourteenth Amendment states, in relevant part, "No State shall make or enforce any law which shall

---

**19.** This provision authorizes the Board to appoint inspectors who have the right to enter "any place, where the business or profession of funeral directing is carried on or advertised as being carried on, for the purpose of inspec-

tion and for the investigation of complaints coming before the Board and for such other matter as the Board may direct." 63 P.S. § 479.16(b).

abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. CONST. amend XIV. Both parties agree that the right to practice one's profession, the right involved in all of Plaintiffs' Substantive Due Process counts, is not a "fundamental right." *Meier v. Anderson,* 692 F.Supp. 546, 550 (E.D.Pa. 1988). When a fundamental right is not implicated, the "rational basis standard" is employed for resolving Substantive Due Process challenges. *Lawrence v. Texas,* 539 U.S. 558, 588, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003). According to this standard, substantive due process rights have not been violated if the laws or regulations at issue are rationally related to a legitimate government interest. *Id.* at 578, 123 S.Ct. 2472.

■ Without getting into the specifics of each of the substantive due process counts, we do note that with relation to each count, the Plaintiffs allege either that the implicated governmental interest is not "legitimate," or that the Funeral Laws and Regulations are not rationally related to the governmental interest, or, in some instances, both. (Compl.¶¶ 200, 216, 219, 237, 247, 263, 279, 300, 302, 337, 384, 403). Taking, as we must, the Plaintiffs allegations to be true, we conclude that the Plaintiffs have sufficiently alleged their Substantive Due Process claims. We will decline the instant Motion to this extent.

### 3. SHOULD PLAINTIFFS' EQUAL PROTECTION CLAIMS (COUNTS III, IV, X, XII) BE DISMISSED?

During the December 15, 2008 hearing, counsel for the Plaintiffs conceded that the

Plaintiffs could not successfully maintain an equal protection claim against any of the named Defendants. Therefore, the Motion will be granted to the extent the Complaint contains claims pursuant to the Equal Protection Clause.

### 4. SHOULD PLAINTIFFS' FREE SPEECH CLAIMS (COUNTS IX, XI, XII) BE DISMISSED?

■ The First Amendment states, in pertinent part, "Congress shall make no law ... abridging the freedom of speech." U.S. CONST. amend I.[20] The test for determining whether the right to commercial free speech has been infringed upon was articulated in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

Under that test we ask as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. If so, then the speech is not protected by the First Amendment. If the speech concerns lawful activity and is not misleading, however, we next ask "whether the asserted governmental interest is substantial." If it is, then we "determine whether the regulation directly advances the governmental interest asserted," and, finally, "whether it is not more extensive than is necessary to serve that interest." Each of these latter three inquiries must be answered in the affirmative for the regulation to be found constitutional.

*Thompson v. Western States Med. Ctr.,* 535 U.S. 357 367, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002) (articulating the *Central Hudson* standard).

■ Plaintiffs aver that the speech in which they seek to engage is lawful and truthful.[21] Further, they claim that, in all

---

**20.** This right is applied to the states through the Fourteenth Amendment, *Locke v. Davey,* 540 U.S. 712, 124 S.Ct. 1307, 1311, 158 L.Ed.2d 1 (2004).

**21.** Defendants claim that the activities in which the Plaintiffs wish to engage constitute the unlicensed practice of funeral directing and are therefore illegal. They then reason that any speech concerning these activities is

instances, the asserted government interests protected by the regulations are not substantial and that, in any case, the regulations do not further those interests and are more extensive that are necessary to serve them. (*Id.* ¶¶ 319, 337, 403). Accordingly, taking the Plaintiffs' allegations as true, we conclude that they have sufficiently pled their claims pursuant to the Free Speech Clause. We will deny the instant Motion to this extent.

### 5. SHOULD PLAINTIFFS' COMMERCE CLAUSE CLAIMS (COUNTS II, III, V) BE DISMISSED?

█ The Commerce Clause states, in relevant part, "The Congress shall have power ... [t]o regulate commerce with foreign nations, and among the several states...." U.S. CONST. art. 1 § 8 cl. 3. The mere existence of the Commerce Clause restricts each state from discriminating against or unduly burdening interstate commerce. *See generally, Pike v. Bruce Church*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). *Pike* enunciated a two prong test to determine whether a state regulation is prohibited by the dormant commerce clause. The first prong inquires whether the state regulation impermissibly discriminates against interstate commerce. *See generally id.* If the answer is in the affirmative, the regulation violates the dormant commerce clause. *See generally id.* If the answer is in the negative, courts are instructed to move to the second prong, which asks if the incidental burdens imposed on interstate commerce are excessive in relation to the putative local benefits. *See generally id.* Again, if the answer is in the affirmative, the regulations violates the commerce clause; if not, there is no dormant commerce clause violation. *See generally id.*

█ In all their Commerce Clause claims, Plaintiffs have alleged that the regulations at issue have no rational relation to any legitimate government interest. (Compl. ¶¶ 200, 219, 248). Accordingly, Plaintiffs have sufficiently pled the second prong of the *Pike* Test and therefore can withstand the instant Motion, which will be denied insofar as it seeks to dismiss claims sounding in the Commerce Clause.[22]

also unlawful and therefore not protected by the First Amendment. We rejected a similar argument in *Walker* and we are inclined to do the same here. Plaintiffs aver that to the extent their speech can be considered "unlawful," it can only be termed such as a result of the inconsistent and vacillating nature of the Board's interpretations of the Funeral Laws and Regulations.

22. It is important to note that Defendants assert that all Plaintiffs but Wellman lack standing to lodge a Commerce Clause claim because they are Pennsylvania residents and/or corporations that are engaged in the funeral industry solely in Pennsylvania, meaning that they do not engage in interstate commerce. To the extent that this is presently true, it is only so because the Funeral Laws and Regulations actually prevent licensed funeral directors from engaging in interstate commerce with regard to certain aspects of funeral directing. Indeed, the Pennsylvania Plaintiffs assert that they would like to expand their funeral businesses in the ways that are proscribed by the Funeral Laws and Regulations. (Compl. ¶¶ 197, 245, 246). We believe that, were the Funeral Laws and Regulations to allow Plaintiffs to do so, their desired expansions would implicate interstate commerce. For example, if Plaintiffs were permitted to hold legal interests in more than one funeral establishment or to practice at more than one branch place of business, they would be free to extend their funeral businesses into the stream of interstate commerce. However, at present, the Funeral Laws and Regulations prevent them from doing. Accordingly, with reference to the *Lujan* factors delineated above, the Pennsylvania Plaintiffs have standing because they have suffered an injury that was caused by the Defendants and which can be remedied by a favorable decision in this litigation. Therefore, all Commerce Clause Claims will proceed past the dismissal stage.

**6. SHOULD PLAINTIFFS' CONTRACT CLAUSE CLAIMS (COUNTS XI, XII) BE DISMISSED?**

 The Contract Clause states, in pertinent part, "[N]o state shall ... pass any ... law impairing the obligation of contract." In determining whether there is a violation of the Contract Clause,

> [T]he threshold inquiry is whether the state law has substantially impaired a contractual relationship. If the state regulation does constitute a substantial impairment, the second step is to determine whether there is a significant and legitimate public purpose behind the regulation, such as the remedying of broad and general social or economic problems. Once a legitimate public purpose has been identified, the court must address whether the adjustment of the parties' rights and responsibilities is based upon reasonable conditions and is of a character appropriate to the legislature's public purpose.

*Keystone Bituminous Coal Ass'n v. Duncan,* 771 F.2d 707, 717 (3d Cir.1985).

 Here, Plaintiffs aver that the Funeral Laws and Regulations, as presently interpreted, prevent them from honoring the contracts entered into when the Board's previous interpretations permitted the consummation of such contracts. (Compl.¶¶ 367, 368, 386, 397, 399, 405). This certainly can be inferred to constitute a "substantial impairment" of contract. The Plaintiffs further allege that the Funeral Laws and Regulations do not serve a legitimate public purpose. (*Id.* ¶¶ 386,

404). Therefore, the Plaintiffs have sufficiently pled a cause of action pursuant to the Contract Clause. Accordingly, the instant Motion will be denied to this extent.

**7. SHOULD PLAINTIFFS' CHALLENGES TO 63 P.S. § 479.11(a)(8) [23] AND 49 PA. CODE § 13.202(5) [24] (COUNT XIII) BE GRANTED?**

Plaintiffs have averred that 63 P.S. 479.11(a)(8) and 49 Pa.Code § 13.202(5) are presently being interpreted by Defendants in a way that disciplines and sanctions Plaintiffs who compensate either trained employees or affiliated insurance agents who, on behalf of Plaintiffs, communicate honest information with potential consumers regarding funeral merchandise or service arrangements on a pre-need basis. (Compl.¶ 419). In *Walker v. Flitton,* we stated that Board members are not to "prohibit agents or employees of specific licensed funeral directors from providing accurate information to consumers regarding the sale of pre-need funeral plans and services.... [U]nder no circumstances may unlicensed individuals contract with consumers for the sale of pre-need funerals, nor may they act as a 'funeral director.' " *Walker,* 364 F.Supp.2d at 529. A logical extension of this pronouncement implicit therein is that these agents and employees can be compensated by licensed funeral directors for their services.

At the December 15, 2008 hearing, counsel for Defendants asserted that licensed insurance agents and employees of

---

**23.** This provision allows Defendants to discipline licensees for: soliciting patronage other than by legitimate advertisement, or paying a commission or agreeing to pay a commission to any person or persons for soliciting or for business secured, or paying any gratuity to any person with intent to have such person aid in securing business, or other similar unprofessional conduct. 63 P.S. § 479.11(a)(8).

**24.** This regulation contains a similar prohibition and authorization to discipline for unprofessional conduct, which includes: paying or extending an offer to pay or give to a person, agency, or group a commission or a valuable consideration for the solicitation or procurement of clientele. 49 Pa.Code § 13.202(5).

licensed funeral directors presently cannot receive compensation from the funeral directors in the form of *commissions* for their efforts. Defense counsel further intimated that agents and employees so engaged can only receive *salaries* from funeral directors for their services. Plaintiffs counsel asserted that a compensatory framework utilizing commissions instead of salaries is the most ideal scheme for the funeral industry. In light of such a perfunctory explanation of the Board's compensatory scheme in this regard, we are unable to determine whether the scheme violates our holding in *Walker* and is therefore unconstitutional. Accordingly, we will deny the instant Motion in this respect and reserve judgment on this matter until we have a more detailed factual record at our disposal.

### 8. ARE CLAIMS FOR INJUNCTION AND CONTINUING JURISDICTION PROPER?

While we have serious misgivings about becoming a "super board" or "parallel board," as Defendants assert would be the case were we to deny the instant Motion in this regard, in light of the foregoing, we believe that it is unnecessary to dismiss Plaintiffs' requests for injunctive relief and continuing jurisdiction at this stage. Therefore, while we will deny this portion of the Motion, it is our expectation that the issues will be revisited as the litigation proceeds. **NOW, THEREFORE, IT IS ORDERED, THAT**

1. The Defendants' Motion to Dismiss the Plaintiffs' Complaint (Rec.Doc.11) is **GRANTED IN PART** and **DENIED IN PART** to the following extent:

 a. The Motion is **DENIED** insofar as it is based on abstention, ripeness, and lack of standing;

 b. The Motion is **DENIED** insofar is the Complaint seeks injunctive and equitable relief from Defendants sued in their official capacities for violations of federal law;

 c. The Motion is **DENIED** insofar as the Complaint seeks monetary relief for violations of federal law and injunctive and equitable relief for continuing violations of federal law from Defendants sued in their individual capacities;

 d. The Motion is **GRANTED** insofar as the Complaint seeks monetary relief from Defendants sued in their official capacities for violations of federal law;

 e. The Motion is **DENIED** insofar as the Complaint seeks injunctive and equitable relief from Defendants sued in their individual capacities for violations of state law;

 f. The Motion is **DENIED** insofar as the Complaint seeks monetary relief from Defendants sued in their official and individual capacities for violations of state law. The Court reserves the right to revisit this issue in the future;

 g. The Motion is **DENIED** insofar as the Complaint seeks injunctive and equitable relief from Defendants sued in their individual capacities for violating state law;

 h. The Motion is **GRANTED** insofar as the Complaint seeks injunctive and equitable relief from Defendants sued in the official capacities for violating state law;

 i. The Motion is **DENIED** insofar as it references claims made pursuant to the Fourth Amendment, Substantive Due Process Clause, Free Speech Clause, Commerce Clause, and the Contract Clause;

 j. The Motion is **DENIED** insofar as it references the Plaintiffs' constitutional challenges to 63 P.S.

§ 479.11(a)(8), and 49 Pa.Code § 13.202(5);

k. The Motion is **GRANTED** insofar as it references claims made pursuant to the Equal Protection Clause;

l. The Motion is **DENIED** insofar as it references Plaintiffs' requests for injunctive relief and continuing jurisdiction.

2. All Defendants may be sued for monetary relief pursuant to Count XII of the Complaint. All Defendants may be sued for injunctive and equitable relief pursuant to all counts of the Complaint.